UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Billy F. Anderson,

      Plaintiffs,                                       Case Action No.: 1:09-cv-798

      v.                                               Judge Michael R. Barrett

County of Hamilton, et al,

      Defendants.

## **OPINION & ORDER**

This matter is before the Court on two motions. The Court first considers the June 18, 2010, Report and Recommendation ("Report") filed by Magistrate Judge Timothy S. Hogan (Doc. 69).[1] The Report is in response to Defendants Hamilton County, Kathy Elfers, Rachel Curran, Joyce Harmon, Fritz Meyer, and Louis F. Strigari's ("County Defendants") Motion for Judgment on the Pleadings (Doc. 40). The Report recommends that the County Defendants' motion be granted, that Plaintiff's federal claims against the County Defendants be dismissed with prejudice, and that Plaintiff's state-law claims against the County Defendants be dismissed without prejudice for lack of jurisdiction. (Doc. 69, 10). Second, the Court considers the motion to dismiss of pro se Defendant Stacy Scherr (Doc. 11).

As to the Report, proper notice has been given to the parties under 28 U.S.C. § 636(b)(1)(C), including notice that the parties would waive further appeal if they failed to

---

[1] All Court document citations are to Docket Entry numbers.

file timely objections.[2]  *See United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  As part of his objection, Plaintiff submitted a mass of evidentiary material (Doc. 76 and associated manual filing) and what the Court will construe to be an amended objection (Doc. 80).  The County Defendants filed two replies (Docs. 77, 82).  For the reasons provided below, the Court ADOPTS the magistrate judge's Report in its entirety.

As to pro se Defendant Scherr's motion to dismiss (Doc. 11), Plaintiff has not formally responded.  Given that both of these parties are pro se, the Court will construe their pleadings liberally.  *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings."); *see also Dell, Inc. v. Elles*, No. 07-2082, 2008 WL 4613978, at *4 (6th Cir. June 10, 2008) (finding it proper for a district court to liberally construe a pro se defendant's pleadings).

## I.  Background

Except where noted, the following facts come from the magistrate judge's Report. (Doc. 69, 2–5.)  Plaintiff, a resident of Cincinnati, Ohio, brings this action pro se against multiple Defendants.  These Defendants can be divided into five groups: (1) Judge Richard Bernat and Judge Julia Stautberg, who were dismissed as parties on June 4, 2010 (Doc. 60); (2) Donald Caster, John Coleman, and Marion Haynes III, who were dismissed as parties on July 2, 2010 (Doc. 73); (3) the County Defendants—the Defendants at issue in the Report—who include Kathy Elfers, Rachel Curran, Joyce Harmon, Fritz Meyer, Louis F. Strigari, and Hamilton County, Ohio (Doc. 40); (4) Robert Ward, the City of Norwood, and the Norwood Police Department; and (5) Stacy Scherr,

---

[2] Notice regarding objections was attached to the Report.  (Doc. 69, 11.)

who is unrepresented by counsel and has not taken an active role in this case other than to file an Answer that denied all allegations and requested dismissal (Doc. 11).

Plaintiff's Complaint (Doc. 1) alleges that on October 20, 2007, Defendants Stacy Scherr and Norwood Police Officer Robert Ward instituted charges of aggravated menacing and carrying a concealed weapon against him. Plaintiff alleges that Scherr and Ward fabricated the probable cause necessary for those charges and that probable cause was lacking to commence criminal proceedings against him.

The heart of Plaintiff's Complaint is his claim that all Defendants conspired to institute or maintain the state criminal action against him in an effort to "cover up" the "erroneous charges" and to "slander and discredit" him. He further alleges the defendants maliciously prosecuted him. (Doc. 1, 3.) He seeks $12,800,000 in damages, as Plaintiff states, "as compensation for loss of Nobel Prize in Economics ($10,000,000 plus interest of $2,800,000)." (Doc. 45, 1, 4–5; Doc. 1, 4.)

With respect to the County Defendants, Plaintiff alleges that Defendant Rachel Curran, the assistant prosecutor in his first trial, advised his public defender that there was no 911 tape of the incident leading to his arrest. Plaintiff alleges that he was ultimately able to obtain a copy of the 911 tape before his second trial. Plaintiff further alleges that Defendant Curran designated Robert Ward, the arresting officer, as the State's representative at Plaintiffs first trial. During his first trial, Plaintiff's public defender attempted to ask Defendant Scherr about a prior written statement when he supposedly walked around the back of Prosecutor Curran's desk and dropped a note on the desk. Defendant Curran objected. Following an off-the-record discussion in the judge's chambers, the objection was sustained. At trial the following day, when the

public defender did not recall Ms. Scherr as a witness, Plaintiff, in the presence of the jury, requested the appointment of new counsel. The judge declared a mistrial, permitted Plaintiff's public defender to withdraw from representing Plaintiff, and recused herself from further proceedings.

Plaintiff maintains that Defendant Fritz Meyer, the jury commissioner for his first trial, selected a biased jury. He alleges that Defendant Meyer personally selected the jury pool and that nineteen out of the twenty prospective jurors had a close friend or family member in law enforcement. As for Defendant Louis Strigari, a public defender, Plaintiff alleges that he recommended that Plaintiff contact someone in the Public Defender's Office about representation. Furthermore, Defendant Joyce Harmon, a court reporter, allegedly failed to transcribe properly some of the testimony and statements made at his second trial.

Additionally, Plaintiff alleges that Defendant Kathy Elfers, the assistant prosecutor at Plaintiff's second trial, denied the existence of a 911 tape proving his innocence. During jury deliberations, the jury asked to hear Plaintiff's cross-examination of Ms. Scherr. Defendant Elfers requested that Ms. Scherr's testimony be read in its entirety when Plaintiff wanted only the cross-examination to be read. The trial judge granted defendant Elfers's request.

Finally, Plaintiff alleges that the public defender assigned to him for his second trial failed to appear for trial. Plaintiff ultimately represented himself, and he was acquitted. Plaintiff alleges that all these events are evidence of a conspiracy to slander him and to have him wrongfully convicted.

4

## II. Legal Analysis

### A. Report and Recommendation Standard

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended decision; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1) (hanging paragraph). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Neuman v. Rivers*, 125 F.3d 315, 323 (6th Cir. 1997) (*quoting Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

### B. Motion for Judgment on the Pleadings Standard

When considering a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c), "'all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (*quoting JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Commn.*, 946 F.2d 1233, 1235 (6th Cir. 1991). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."

5

*Fritz*, 592 F.3d at 722; (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)).

### C. Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must liberally construe pleadings by a pro se litigant, and no matter how inartfully pleaded, a pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers. *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle* v. *Gamble,* 429 U.S. 97,106 (1976).

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, *passim* (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain detailed factual allegations, yet it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 555). A pleading that offers labels and conclusions or merely a formulaic recitation of legal elements will not do. *Twombly*, 550 U.S. at 555. Nor does

6

a complaint suffice if it tenders naked assertions devoid of factual enhancement. *Id.* at 557. While a plaintiff need not plead specific facts, his or her statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (internal quotations omitted).

A court may consider the following when ruling on a motion to dismiss: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Smith v. Bd. of Trs. Lakeland Cmty. Coll.*, --- F. Supp. 2d ---, 2010 WL 3861004, at *7 (N.D. Ohio 2010) (*citing Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924–25 (N.D. Ohio 2009)).

### D.     Plaintiff's Lack of Objections to the Report

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling . . . ." *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007). However, there is no requirement for a district court to review aspects of a magistrate judge's report where a party has failed to make specific objections. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *see also United States v. Robinson*, 352 F. App'x 27, 29 (6th Cir. 2009). Furthermore, "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Report makes many specific recommendations to which Plaintiff never responds. First, as to Defendant Curran and Elfers, the magistrate judge recommends

7

that the charges against these two Defendants should be dismissed because as prosecutors, they are absolutely immune for their prosecutorial conduct. (Doc. 69, 5) (*citing Manetta v. Macomb County Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998)). Plaintiff does not respond to this argument anywhere in either of his Objections or in the manual filings associated with his first Objection (hereinafter referred to as "Manual Filing"[3]). (*See* Docs. 76, 80, Manual Filing.) As such, Plaintiff waives review of this recommendation, and in this respect, the Report is ADOPTED.

As to Defendant Louis Strigari, a public defender, the Report recommends that he be dismissed because the allegations against him fail to state a claim for relief under 42 U.S.C. § 1983. Furthermore, as a public defender, Defendant Strigari does not act under color of state law for purposes of § 1983 liability. (Doc. 69, 5–6) (*citing Polk County v. Dodson*, 454 U.S. 312, 325 (1981)). Plaintiff does not respond to these arguments either. Plaintiff waives review of this recommendation, and the Report is therefore ADOPTED.

As to Defendant Hamilton County, the Report concludes that no § 1983 claim is stated against it because counties are not vicariously liable for the actions of their employees under § 1983. (Doc. 69, 6) (*citing Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 411 (6th Cir. 2000)). Additionally, Plaintiff's Complaint fails to allege facts showing that the County Defendants acted under a policy or custom in violation of Plaintiff's civil rights. Again, Plaintiff does not respond to these arguments. The Report is therefore ADOPTED in this respect.

---

[3] Given that Plaintiff's Manual Filing is incorporated by reference to his pleadings (it is referenced in the Complaint) and that it is central to his allegations, the Court will consider it in ruling on the magistrate judge's Report and on pro se Defendant Scherr's motion to dismiss. *See Smith v. Bd. of Trs. Lakeland Cmty. Coll.*, --- F. Supp. 2d ---, 2010 WL 3861004, at *7 (N.D. Ohio 2010) (*citing Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924–25 (N.D. Ohio 2009)).

As to Defendants Joyce Harmon, the court reporter, and Fritz Meyer, the jury coordinator, the Report concludes that Plaintiff has failed to allege any injury resulting from either of their actions.  (Doc. 69, 7–8.)  Plaintiff fails to respond to this recommendation as well.  Thus, as to these Defendants, the Report is ADOPTED.

The Report finally recommends that the County Defendants be dismissed from this action because Plaintiff's § 1983 conspiracy claim fails to state a claim upon which relief may be granted.  (Doc. 69, 8.)  As to this claim, Plaintiff does make a valid attempt to raise specific objections.  (*See* Doc. 80, 4.)  In effect, he has amended his Complaint by alleging more facts.

**1.    Section 1983 Conspiracy**

The Sixth Circuit has defined a civil conspiracy under § 1983 as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 993–94 (6th Cir. 1985).  Conspiracy claims must be pled with a degree of specificity.  *Hamilton v. City of Romulus*, No. 09-2196, 2010 WL 4721141, slip op. at *10 (6th Cir. Nov. 12, 2010) (*citing Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).  Vague and conclusory allegations unsupported by material facts are insufficient, although circumstantial evidence of an agreement among all conspirators may provide adequate proof.  *Id.*

Plaintiff bolsters his claim with the following allegations: (1) Defendant Scherr

9

was coerced into filing a false statement and to perjure herself; (2) Plaintiffs attorneys were threatened into cooperating with the prosecutor and the judge, both of whom wanted Plaintiff convicted; (3) Defendant Scherr's statement was contradicted by her sworn testimony; (4) trial transcripts show that Defendant Harmon slanted the trial transcript in the judge's favor; (5) Officer Ward sat too close to Defendant Scherr while she testified, thereby ensuring her perjury; (6) the trial transcripts show that Defendant Meyer rigged the jury; (7) the judge meant to railroad him as evidenced by his intent to "keep this train moving"; and many other factual allegations that the Court cannot adequately summarize. (Doc. 80, 4–5.) These allegations do not show a single plan against Plaintiff or show any overt acts in furtherance of a conspiracy. Neither do they rise above *Iqbal*'s requirement of facial plausibility. *See Iqbal*, 129 S. Ct. at 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

For example, Plaintiff states, "[t]he trial transcripts show [Judge] Stautberg's intent to . . . 'railroad' me." Plaintiff's proof of this claim is the following exchange from his first trial that occurred just before prospective jurors were brought into the courtroom:

> Ms. Curran: Do you think we may actually get to testimony today?
> The Court: Oh, I hope. You know what, it depends on how long it takes to pick the jury.
> Ms. Curran: I agree.
> The Court: My intention is to keep this train moving.
> Ms. Curran: Thank you.

(Manual Filing, Ex. D, Trial One Tr., p. 5.) This is not evidence of a conspiracy to

"railroad" the Plaintiff. Rather, the judge was answering the question of whether the preliminary phases of the trial would proceed quickly enough to allow testimony to occur on that same day. Litigators regularly ask this question, and judges answer it freely. This is not evidence of a conspiracy.

As another example, Plaintiff alleges that Defendant Harmon, the court reporter, "tried her best to slant to the judge's favor . . . ." (Doc. 80, 4.) But there is nothing in the record to indicate this is true. This allegation is the kind of naked assertion devoid of factual enhancement that the Supreme Court in *Twombly* warned against. *See Bell Atl. Corp. v. Twmbly*, 550 U.S. 544, 556 (2007).

Furthermore, even if all Plaintiff's allegations are true, there is no evidence from which to infer that the Defendants acted in concert. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (holding that arrestee could not establish § 1983 civil conspiracy claim absent evidence that defendants acted in concert to violate arrestee's constitutional rights). This Court agrees with the magistrate judge where he stated, "Plaintiff's vague and conclusory allegations of a conspiracy are insufficient to state a claim for relief under § 1983 and may not be used as a basis for liability against the County Defendants." (Doc. 69, 9.) The Court ADOPTS the Report in this respect and the § 1983 conspiracy claims against the County Defendants are DISMSISED.

    E.    **Supplemental Jurisdiction**

The Report's final recommendation is that because Plaintiff fails to state a viable federal claim against the County Defendants, the Court should decline to exercise supplemental jurisdiction (otherwise known as pendent jurisdiction) over Plaintiff's state-law claims. (Doc. 69, 9–10) (*citing United Mine Workers v. Gibbs*, 383 U.S. 715, 725–

11

726 (1966)) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). Again, this Court agrees. *See* 28 U.S.C. § 1367(a), (c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). The Report is ADOPTED in this respect and Plaintiff's state-law claims against the County Defendants are DISMISSED without prejudice for lack of jurisdiction.

### F. Defendant Scherr's Motion to Dismiss

The Court finally takes up an issue that has remained unaddressed for too long. In her answer, filed on December 1, 2009, pro se Defendant Stacy Scherr, "ask[s] the court for a dismissal . . . ." (Doc. 11, 1.) Given the requirement to construe a pro se litigant's pleadings liberally, *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007), the Court construes this request as a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

#### 1. Background

Recall that this case grew out of an October 20, 2007, encounter Ms. Scherr had with Plaintiff outside Ms. Scherr's home. (Doc. 24, 1.) This encounter quickly escalated into a shouting match, and Ms. Scherr alleged that Plaintiff came onto her porch uninvited and implicitly threatened her by telling her that he had a gun. During this encounter, Ms. Scherr coincidentally happened to be talking to a friend on the telephone. Because she perceived Plaintiff as a threat, Ms. Scherr told this friend to call 911 and summon the police. (Manual Filing, Ex. B, Aff. of Stacy Scherr.) Officer Ward arrested Plaintiff when he arrived at the scene, eventually charging him with aggravated menacing and carrying a concealed weapon. (Doc. 1, 3; Manual Filing, Ex. B, Incident

Report.)

This Court has construed Plaintiff's Complaint as bringing state-law claims of perjury, malicious prosecution, slander, and § 1983 civil conspiracy against Defendant Scherr. (Doc. 1, 3; Doc. 24, 2; Doc. 32, 3, 5; Doc. 33, 5.) As to the conspiracy claim, Plaintiff states, "Ms. Scherr conspired with, or was cajoled or coerced by Patrolman Ward to make false allegations against me." (Doc. 24, 2.)

### 2. Liability Under 42 U.S.C. § 1983

To maintain an action under 42 U.S.C. § 1983, a plaintiff must demonstrate two elements: (1) that the alleged conduct was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Graham v. NCAA*, 804 F.2d 953, 957 (6th Cir. 1986) (*citing Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Thus, "there is an initial question of whether [a defendant] may be held liable under a statute directed at constitutional violations at the hands of the government." *Garcia v. Dykstra*, 260 F. App'x 887 (6th Cir. 2008). As the Sixth Circuit has stated, "[s]ection 1983 is directed at actions taken pursuant to governmental authority, and 'does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities.'" *Id.* (*quoting Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007)).

However, private actors may be held liable as "agents of the government" when their conduct is "'fairly attributable to the state.'" *Id.* (*quoting Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 636 (6th Cir. 2005)). Private conduct is actionable under § 1983 if it is: (1) the exercise of a public function; (2) a result of a symbiotic relationship or nexus

13

between the government and a private party; or (3) the result of a state compulsion.  *Id.* (*citing Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)).

The public-function test requires that the private entity must exercise powers traditionally reserved exclusively to the state.  *Id.* (*citing Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003).  Here, Defendant Scherr's acted as a complaining witness who brought a criminal charge against Plaintiff.  Any individual citizen can exercise these powers.  Therefore, Ms. Scherr did not exercise powers traditionally reserved exclusively to the state.  This exception does not apply to make Ms. Scherr an agent of the government for § 1983 purposes.

Under the symbiotic-relationship or nexus test, "'a § 1983 claimant must "demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself."' *Id.* (*quoting Chapman*, 319 F.3d at 834).  This test requires a close relationship between the state and the private actor, such as through state regulation or contract.  *Id.*  (*citing Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)).  Here, there is no suggestion of any relationship between Ms. Scherr and the state, either through personal relationships with the governmental defendants or through regulation or contract.

### 3. The State-Compulsion Test

The state-compulsion test requires proof that the state significantly encouraged or somehow coerced a private party to act, either overtly or covertly, such that the choice to act was really that of the state.  *Id.* (*citing Tahfs*, 316 F.3d at 591).  Construing Plaintiff's pleadings liberally, he makes allegations that apply here.  Plaintiff alleges that state actors coaxed, cajoled, or coerced Ms. Scherr into making false statements.  His

offer of proof to support this assertion includes the following: (1) Ms. Scherr's "written statement . . . contradicts her sworn testimony"; (2) her written statement has additions showing that there was no basis for charging Plaintiff; (3) no perjury charges were filed against Ms. Scherr; (4) the 911 caller "never mentioned any gun or threat or that anyone was scared (or in danger)"; and (5) Officer Ward was permitted "to sit 3 feet away from Scherr when she testified to ensure that she stuck to his story." (Doc. 80, 4–5.) The Court considers each of these points.

First, as to the argument about Ms. Scherr's written statement contradicting her sworn testimony, this proves nothing. Witnesses commonly make contradictory statements—it occurs every day for a multitude of reasons. It is impossible to conclude a conspiracy was at work merely because a witness makes contradictory statements.

The same is true for the argument about the additions to Ms. Scherr's written statement. A witness may alter his or her written statement for a myriad of entirely valid reasons. This is a common, every-day occurrence. Adding a few lines to a written statement is no indication of conspiracy.

Plaintiff next argues that because no perjury charges were filed against Ms. Scherr, this proves that she was in a conspiracy with government prosecutors. The Court sees no indication that Ms. Scherr lied, but even if she did, the fact that she was not prosecuted does nothing to prove a conspiracy. Considering how often witnesses are suspected of perjuring themselves (an all too common occurrence given the strong inclination many people have towards lying) perjury prosecutions are remarkably rare. The Court dares to guess that if every person suspected of lying under oath was charged with perjury, America's courts would be hopelessly clogged. The absence of a

perjury charge proves nothing.

As to Plaintiff's argument about the 911 caller never mentioning a gun, a threat, or that Ms. Scherr was frightened, this also proves nothing.  Upon review of the 911-call transcript, this Court can see that it was entirely irrelevant to Plaintiff's case.  If the caller failed to mention something that occurred at the scene between Ms. Scherr and Plaintiff, this is not surprising given that the caller was not present at the scene and was only relaying a hasty, second-hand report.  The 911 call does nothing to prove Plaintiff's guilt or innocence—it is entirely irrelevant.  Moreover, there is no connection between the 911 call and any alleged conspiracy.

Finally, there is no legal or logical link between how close Officer Ward sat to Ms. Scherr during her testimony and the truthfulness of her testimony.  The suggestion that Officer Ward's presence influenced Ms. Scherr's testimony is nothing more than speculation.  To conclude that this is indicative of a conspiracy would require many additional facts that Plaintiff has not alleged.  Viewing all of the above allegations, even if every fact that Plaintiff puts forth is true (discounting his legal conclusions that are impermissibly couched as factual allegations), there is no actionable federal claim here.

Plaintiff has presented no facially plausible evidence to show that Ms. Scherr acted under state compulsion.  Thus, Plaintiff cannot demonstrate that the state was "so intimately involved in the challenged private conduct" that Ms. Scherr's actions could be classified as state action for § 1983 purposes.  *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  Because she did not act under color of state law, Plaintiff's § 1983 civil conspiracy claim against Ms. Scherr is DISMISSED.

**III. Conclusion**

Based on the foregoing, it is **ORDERED** that Magistrate Judge Timothy S. Hogan's June 18, 2010, Report and Recommendation (Doc. 69) is hereby **ADOPTED** in full. The County Defendants' Motion for Judgment on the Pleadings (Doc. 40) is **GRANTED**. Additionally, because Plaintiff has failed to state a claim upon which relief may be granted, pro se Defendant Stacy Scherr's motion to dismiss (Doc. 11) is **GRANTED**.

As a result, Plaintiff fails to state a viable federal claim against the County Defendants or against Ms. Scherr, and this Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. 28 U.S.C. § 1367(c)(3). Therefore, because all federal claims against them have been **DISMISSED with prejudice** and because all state-law claims against them have been **DISMISSED without prejudice**, Defendants Stacy Scherr, Hamilton County, Kathy Elfers, Rachel Curran, Joyce Harmon, Fritz Meyer, and Louis F. Strigari's are terminated as parties in this case.

**IT IS SO ORDERED**.

*s/Michael R. Barrett*
United States District Judge